Mr. Scarlatoiu, good morning.  There's a jurisdiction problem in this case that is really Byzantine. I haven't been able to figure it out yet, and I thought maybe you can help us out by at least addressing whether this Court has jurisdiction to review this case, which I understand is subject to a removal proceeding. Certainly, Your Honor. Before I begin, good morning. May it please the Court. We would respectfully request a three-minute rebuttal. Yes, sir. Okay. As Your Honor has stated, there indeed was a jurisdictional issue in this case. You're speaking in the past tense now. We say so because we believe that the district court correctly held that it did have subject matter jurisdiction pursuant to 8 U.S.C. section 1421C. That section gives the district court's jurisdiction to review, to de novo review, denials of applications for naturalization so long as they are filed within the 30-day timeframe prescribed by Congress. I think the question is what about section 1492, which says no application for naturalization can be considered if there's a pending removal proceeding? Yes, Your Honor. There certainly is a conflict, and I will address your issue. But let me state one thing first. The section contained at 1421A gives the attorney general sole authority to naturalize persons, and 1421C gives the district court jurisdiction to review denials of naturalization applications. So if the attorney general has the sole authority to naturalize persons, but yet, on the other hand, Congress has given the district court's jurisdiction to review the denials of naturalization, right there we have a conflict. Why is there a conflict? Well, the conflict is this. If the attorney general is given sole authority to naturalize persons, then how can a district court meaningfully review a denial of naturalization? If it's only avenue, if it could only affirm a denial, that would. So you hear the attorney general hears the application in the first instance, and we, the district court, then hears denials of those applications in the second instance. I'm sorry, Your Honor. Yes, but what review could the district court have just to affirm the denial? If it were to overturn the decision denying the application for naturalization, what remedy could the district court have, notwithstanding what is contained at 1421C? Congress says the district court can review decisions of the attorney general on naturalization issues. And that means it could reverse, it could vacate, it could essentially grant naturalization. And district courts historically have done that, haven't they? We agree, Your Honor. I don't see the inconsistency. I think the problem comes to play when there is an order of removal. Your Honor, in the case at hand, we have a very, very unique factual scenario. And what has happened in the instant case is Mr. Gonzalez had a full administrative decision on the merits of his application for naturalization. The government issued a denial. Mr. Gonzalez sought a rehearing of that denial administratively. Again, the government upheld its denial. Section 1421C provides a substantive right to applicants for naturalization whose applications have been denied, so long as they file a timely petition for review within that 30-day time frame. And you did, right? Which we did, Your Honor. And as such, Mr. Gonzalez is entitled to have a de novo review of that denial decision. But the problem is how does that in Section 1492, which says that an application for naturalization can't be considered if there's a pending removal proceeding. Of course, now there is a pending removal proceeding. What we're concerned about is how do you reconcile both to permit jurisdiction? Sure. The conflict can best be laid to rest by a case-by-case analysis. The majority of the cases that the government puts forward in support of its argument that the district court did not have subject matter in this case all follow from an applicant whose application was denied on the basis that he was already in removal proceedings and then sought a petition for review after. In the instant case, we had a decision on the merits, none of the grounds of which stated that the applicant was already in removal proceedings. What if you have a decision on the merits by the Attorney General concerning naturalization, then you have an appeal to the district court under 14, I think it's, no, it's C, 1421C, then you have the Attorney General saying, wait a minute, we're just going to remove him, and they start removal proceedings. What does the district court do? It should proceed as it has in the instant case. Even though there's a removal proceeding in under 1429, is it? I'm sorry, could you repeat that? The district court has no jurisdiction to hear, no subject matter jurisdiction to hear naturalization cases when there's a pending removal proceeding. What is the district court to do? The district court, in instances such as ours, where there is a full decision on the merits and the petitioner has filed a timely petition for review within that 30-day period, should proceed with accepting that petition for review. What do you do with 1429 that says there is a removal proceeding and the court has no jurisdiction? Yes, Your Honor. The section in question, 1429, states that the Attorney General shall not consider an application for naturalization. At the case at hand, the immigration service vis-à-vis the Attorney General had already considered the application, rendered a decision on the merits, again through an administrative rehearing, affirmed the denial. Well, your view would be that once there is a petition for review filed with the district court, irrespective of a 1429 removal provision, the district court should just go ahead and because Congress says the district court can do this, make a decision as to whether to grant or deny naturalization. Is that your position? Not necessarily, Your Honor. I thought it was a good position for you. We are advocating a case-by-case analysis because the appellant, Mr. Gonzales, in this case, had gone through the necessary procedures of having a rehearing and timely filing his petition for review. We would contrast that with other cases whereby the applicant's naturalization applications have been denied since he had been placed into removal proceedings prior to immigration rendering a decision. In those instances, we would agree that the district court does not have jurisdiction to entertain a petition for review since removal proceedings were initiated prior to the Attorney General. But Congress says the district court can entertain petitions for review. It doesn't condition it on really anything. It just says naturalization reviews of decisions by the Attorney General can be heard by the district court. Your Honor, it is quite correct. 1429 does not act as a limit to the district court's subject matter jurisdiction. Only the Attorney General? Is that what you're saying? I'm sorry? It only acts as a limitation on the Attorney General? That's quite correct, Your Honor. Okay. So do cases like the Zayed case from the Sixth Circuit and Bellagaro from the Ninth Circuit, do they help you? The Zayed case states that Section 1429 precludes relief since the court cannot fashion an effective remedy. The district court, we believe, correctly held that it can fashion a remedy since the Attorney General need not consider the application anymore. It need only consider the district court's order whether or not to naturalize the applicant. You did read the district court's decision in this case? The district court's decision? Yes, Your Honor. Saying it has jurisdiction? Yes, Your Honor. So your position here today is we should just affirm because it was well-reasoned? Yes, Your Honor. I know your time is running and there's another aspect to your case, so I thought you might want to get into it. Yes, Your Honor. Getting to the appeal at hand. Before we leave that, the courts that have tried to square the priority provision with the judicial review provision have taken slightly different approaches to it. In the Bellagaro case, you didn't get to discuss, but Judge Reimer said there that it does affect the scope of review. And if you apply that rule here, how would that then limit what the district court should do in this case? Certainly, Your Honor. I believe the court in that case was referring to the decision of the Immigration Service in denying the application in the sense that it was limited to the grounds for denial. In the instances where the grounds for denial were pending removal proceedings, it could review to see if removal proceedings were pending prior to the decision being rendered on such grounds. Let me follow up on that point. So the district court's decision, once it has the 1421C judicial review power, is to grant or deny naturalization. That is correct. That's all it can do. It cannot make any decision affecting removability. Would you agree with that? We agree. The district court can fashion a remedy to either affirm the denial of the government or order the Attorney General to naturalize the applicant. Okay. But the Attorney General can say, thank you very much. We're going to remove him anyway. Well, then the Attorney General — There's nothing to prevent that, is there? Well, the Attorney General would then be — would not be respecting the order of the district court. Okay. So to square that, the district court could limit itself to giving declaratory relief. Certainly, Your Honor. Actually, once the court says, I'm going to make you a naturalized citizen, does the Attorney General have the power to remove a citizen of the United States? No, Your Honor. But the district court could limit itself, couldn't it, to saying that the basis upon which you denied the naturalization was incorrect? That is correct. And it has the power to conduct de novo review. Exactly. So it could make its own findings with regard to the facts that should be considered. But couldn't it leave the ultimate determination still to the Attorney General? That would render de novo review meaningless. On the basis of the record here, couldn't the Attorney General then look to decide whether or not it should remove or not? If the Attorney General was ordered by the district court to naturalize the applicant — Without the order of naturalization. Simply by doing what it is told to do, which is to make findings of facts de novo, wouldn't that be sufficient? Your Honor, I see my time has expired, if I may. Certainly. The district court can make findings of fact and issue a declaratory judgment pertaining to whether or not the applicant is eligible for naturalization and should have been naturalized. As the district court pointed out, at its outermost authority, it could very well naturalize the applicant themselves. Thank you, Your Honor. Okay.  Ms. Pratt? Incidentally, I may have started this. We were incorrectly referring to 8 U.S.C. Section 1429. It's actually 1492, so I assume we're all talking about the same thing, Section 1492. The removal. Right. Thank you. Good morning, Your Honor. Cherise Pratt for the government. May it please the Court. I believe the correct provision is 8 U.S.C. Section 1429. Okay. Mr. Gonzalez is doing exactly what 8 U.S.C. 1429 was enacted to prevent. He is raising Ms. Pratt, could you pick up where we were on the Bellagiaro case and tell us what that case's teaching is for us? Oh, yes. Because we have a slightly different case, but if we were to follow Judge Reimer, we would say we have jurisdiction, but the scope of review is affected by this balance between the priority provisions and the judicial review provisions. And what would that instruct us here? Okay. There is a line of cases that finds it lacks subject matter jurisdiction, and then there's a line of cases that say that when an alien is in removal proceedings and he files an application for naturalization, the court cannot afford him relief because it would be an advisory opinion because he's in removal proceedings and Section 1429 has priority. Why is that? Congress intended to halt consideration of an alien's naturalization application until removal proceedings had ended. Is that your reading of the statutes, or is that part of the congressional record or the history? It's part of the congressional history, and it's cited in Schomburg v. United States, the Supreme Court. It's consistent with Congress's goal of ending the race between the alien to gain citizenship and the attorney general to deport him. When was that case decided? In 1955. Of course, that was the purpose of it. But in 1990, it also very clearly extended the full panoply of judicial review in a very strong form, the de novo review. And when Judge Reimer looked at the question and said, how do we square these, she said what you have to do is you have to limit the scope of review under 1421. Now, if we were to do that and try to square them in the way she did, say, yes, we have jurisdiction, but we have to eliminate the race to the courthouse, what would we do here? Wouldn't we have to decide that it was appropriate for the district court to issue a declaratory ruling? No, you would decide that the district court should have decided that he failed to state a claim for which relief could be granted because he was in removal proceedings. But the removal proceedings were initiated after the CIS determination and after the appeal to the district court. No, that's not correct. The right? The removal proceedings were initiated in June of 2009, and thereafter, in July, he filed a petition, Mr. Gonzalez, for de novo review of the denial of his naturalization application. Did Congress give the district courts the power and authority to do just that, regardless of whether there has been filed a removal proceeding? Congress wanted to end the race between naturalization and deportation. It's not really necessarily a race. It just happens to have objected to the court's decision with regard to his petition for permanent residency or naturalization, I'm sorry. He's trying to become naturalized before his removal proceedings have ended. He needs to exhaust his remedies in the removal proceedings. The immigration judge may well find that he's entitled to. Why this is an exhaustion requirement that you are now imposing on 1421C? Because to hold otherwise would mean that he is pursuing two remedies simultaneously in two different forums, in immigration court and in district court. How do you respond to your adversary's point about Section 1429, that it only really prohibits the attorney general from considering a naturalization petition? Okay. Versus the court. Okay. Prior to the legislative amendments, the reading said that naturalization courts were prohibited. So from 1950 to 1990, the district courts were prohibited from naturalizing, ruling on naturalization applications while removal proceedings were pending. Then when Congress changed the wording, before it had said naturalization courts and that referred to the district court's authority to naturalize, it changed naturalization courts to attorney general. Right. And at that time, it restored the de novo review. Right. So how do we square those? How do we say, yes, we'll give full effect to that legislative provision while not reinstituting the race to the courthouse? It doesn't make sense to say that the attorney general has no authority to consider an application but that it could be ordered to grant one by the district court. Right. I understand that. So why couldn't it be ordered to reconsider its decision based on the facts decided here? Isn't that the reason? No. 1429 prevents that. It only prevents that if you believe that it cuts off the right to judicial review. If you accept, as Judge Reimer did, that it continues to provide for jurisdiction for judicial review, then its only limitation is on the scope of review. And I'm asking you how we should look at it from that point of view. You cited the case. Right. And if you want to look at it from that point of view, I think those courts find that the alien fails to state a claim for which relief can be granted. How do you square then the Sixth Circuit's opinion, Zayed, and the Ninth Circuit case, as Judge Pogue pointed out? They go against you. Do you have a court of appeals case that supports your position? Well, I believe Zagrean, where the Third Circuit equated the authority of both the attorney general and the district court to consider an application. That dealt with the regulation, though, right? But they still said, they still put it on par, the attorney general's authority and the district court's authority. But that case sought to terminate the removal proceedings. Nobody's suggesting here that the removal proceedings should be terminated. The question is how do you square the two rights? But the meaning can't have one meaning in one context and another meaning in another context. Either the district court and attorney general have the same authority or one is greater, but it can't turn on the context. Wouldn't it be fair to say that most denials of naturalization either at about the same time or right after involvement in removal proceedings? Denials of naturalization, is that fair to say? I don't believe so. No, I think if someone's application is denied, let's say they've had a crime in the last five years, it's denied for lack of good moral character, they can reapply again in five years. I would think if they're denied because of lack of good moral character, they're going to be tossed out, just like Mr. Gonzalez. No, in Mr. Gonzalez's case, he lied at his conditional residence interview in 2004, and the conditions on his lawful permanent residence were removed based on those lies, based on his saying that he had no children, that he was living with his wife, that they had joint bank accounts. The immigration officer took notes and removed the conditions on his lawful permanent residence, and he became a lawful permanent resident. Maybe we should go back to Judge Polk's question. The jurisdiction issue is probably more interesting, more difficult, I should say. How do we square the two, I believe, was the trust of the question, the right to challenge the decision as to naturalization and the removal provision? He has the right to challenge the decision, but he must wait until removal proceedings have ended. Wouldn't it make him moved, though? I mean, if he's removed. He might not be removed. He might be entitled to a waiver. What if he is, though? No, then he has a petition for review before the Third Circuit Court of Appeals, and he can make his arguments there. On a very different standard of review, right? A tremendously deferential standard of review. Well, he would be challenging the order of removal. Yes. Right. And that's a very deferential standard of review, is it not? I believe so. But in challenging the order of removal, it would make it a whole different case if he has a decision as to naturalization, and let's say he prevails. Then if he prevails, he's entitled to file an application for naturalization. That's why I think the provision regarding judicial review is important. Congress said the courts have that authority and power, and it should be done. So if you believe that the court had – If you're going to ask me a question, I'm going to stop. It goes the other way. No, I was going to continue with my argument. Oh, I'm sorry. Okay. It's like assuming that – if you're assuming that the court did have subject matter jurisdictions, well, Mr. Gonzalez claims that the district court's decision was incorrect. We believe it was correct in finding that he lacked good moral character. Mr. Gonzalez challenges the notes of the immigration officer. The federal rules of evidence don't apply in administrative proceedings. That's where those notes were taken. Administrative record and agency declarations are commonly attached to motions for summary judgments and considered on motions for summary judgment. The content of the officer's notes corroborates Gonzalez's deposition testimony, where he testified that he never disclosed that he had two children out of wedlock. They corroborate the fact that he was not living with his wife, who he represented to the officer that he was living with at that interview. His divorce complaint is another admission against his interests, where it says that he, in July, the bank accounts were attached. He moved out of the residence on August 1st, two days before the interview, before the immigration officer. Didn't the district court basically make a credibility determination on summary judgment? The district court, he found Mr. Gonzalez's chronology of the story and his version just implausible. Right. He made a credibility determination. Mr. Gonzalez presented no evidence to rebut anything other than self-serving comments. He made his own statement that he had not acknowledged the kids, and therefore he didn't, at that time, believe that they were his kids. Right? That's what he said, but he had no evidence to back that up. Well, he hadn't told Ms. Otero, right? He had not told Ms. Otero. Right. So now why isn't it a reasonable construction of that record, that he decided to make a family with Ms. Pissinnen, if I'm pronouncing that right, after his divorce with Ms. Otero, and that all the things he did with the kids and acknowledging the kids came later, rather than at the time of his original interview? At the time of his original interview, well, if you just look at the divorce complaint, it says that he moved out of the house prior to... Day or two, I mean. Right. But, I mean, how significant is that? And then if you look at the divorce complaint, it also says he has two children out of wedlock. Yes. From another relationship. Well, he didn't disclose that at his... But that was later. 751 interview. Wasn't that later than the 751 interview? It was two months later. These kids were born in 2000 and 2001. The girlfriend told him she was pregnant. He was living with her when she was pregnant, when he met Ms. Otero. Right, and she was married to somebody else. Who's in Brazil. I'm not arguing, one, that he was, you know, may ultimately be correct, that he lied. The question is, on summary judgment, weren't we supposed to draw inferences in his favor? The court looked at the record and there were no inferences he could draw in his favor because all he submitted were self-serving statements saying that he didn't know. And it was totally unreasonable for him, that's your position, that his presentation, no reasonable mind could believe this. No reasonable mind looking at this record could believe it, given the fact that he was living with the girlfriend, he was having sexual relations with the girlfriend, she became pregnant, she said he was the father. You looked at the original birth certificates and you can see what the names on the original birth certificates say. Provided her with financial assistance. Throughout. Throughout, from the earliest stages of the pregnancy, when she couldn't work, extra money for rent they'd meet secretly. At deposition, he was upset with his U.S. citizen wife taking money from the bank account, yet he was supporting his girlfriend all along and their two children. You could reasonably infer he had the intent to establish the life with that girlfriend and the two kids. He was living with her, as you could see from some of the bank statements that were sent to North Broad Street, the North Broad Street address that he shared with the girlfriend. His U.S. citizen wife said she never lived at that address. She had never been to that address. Of course, your time is running, but can I clarify one point with you? Yes, Your Honor. Back to the jurisdiction issue. I think you had said in response to a question of Judge Polk, in terms of the order of filing that Mr. Gonzalez had, or the Attorney General had filed an order of removal in June of 2009, if I'm not mistaken, and it was after that that he filed a petition for review of the naturalization. That's correct. And you say that because of that, the Court should defer to the Attorney General's removal power, because you filed the application first. Removal proceedings had been initiated prior to his filing, but I think irrespective of the timing. I think once an alien is in removal proceedings, I think the Court lacks jurisdiction. I thought you were talking about timing before and that the Congress is trying to avoid all of that. So in that context, I thought you were saying that in as much as the Attorney General had filed removal proceedings first and then there was an application in the District Court, the removal proceeding takes precedence. That's correct. But what I wanted to ask you is what if it were just the opposite? In other words, he went to the District Court first and then the Attorney General said, I'm going to remove you, then applying your theory, then he has to have his case heard first and the Attorney General would have to wait. Would that be accurate? That is not my position. My position is that it doesn't matter when he's put into removal proceedings because Congress enacted 1429 with the intent of ending that race between the alien naturalizing and the Attorney General deporting it. So once the Attorney General determines there's ground for removability, I think that process has to go first. I see. So there's no race to the clock or race to the court. Once the Attorney General starts removal proceedings, that would completely oust the District Court of any jurisdiction. Yes, Your Honor. You think Congress intended that? Yes, Your Honor. Thank you, Ms. Mack. Thank you. Your Honors, I can see that the subject matter issue is very important to the court, and so I, again, will pick up where I left off. We would first point out that we are advocating a case-by-case analysis, differentiating those cases where the applicant was placed in removal proceedings prior to a decision being written as opposed to Mr. Gonzalez's case where a full administrative decision was rendered and then the applicant was. Why does that matter? It might affect the scope of the District Court's review, but why does that matter for jurisdiction? Well, it matters for jurisdiction purposes, Your Honor, because in the instances where the person is placed into removal proceedings, 1429 does trump 1421C. We concede that because the Attorney General is not considering, cannot consider an application when removal proceedings are pending. So in those instances where the applicant is placed into removal proceedings, then the government can effectively deny the application on those grounds, that the Attorney General can no longer consider his application. In our case, however, Mr. Gonzalez had a full administrative decision, exhausted his administrative remedies, and filed a timely petition for review with the District Court. If we were to hold that 1429. It is true that the application in the District Court was subsequent to the Attorney General's removal proceeding? It was, Your Honor, but it was within the prescribed time period that Congress has provided for the petition. So you don't agree with Ms. Katz that that automatically, essentially means that you have to defer to the removal proceeding? Your Honor, if we were to accept that position, then that would mean that the government could at any time throughout the petition for review or even an appeal by the government appealing the District Court's decision. So Mr. Gonzalez files an appeal and the Attorney General says, oh, we got one better on you, so they file a removal proceeding and that's it? Exactly. The government could. Is that how you interpret the theory that is advanced by Ms. Pratt? Well, I could see that it could be used to subvert access to the courts by simply placing the individual in removal proceedings. That's of more concern to me because it seems that Congress gave the courts some authority to review denials of naturalization applications, but the Attorney General undermined that authority by initiating removal proceedings. That's absolutely correct. But on the other hand, why doesn't it make sense if he's removable for statutory grounds, he should be removed irrespective of the District Court's decision? Well, as we have stated, first, the facts which led to the government initiating removal proceedings were known to the government as early as 2006. It wasn't until 2009 that they had placed him in removal proceedings. I see my time has expired. Just one more thing. Judge Pogue asked your adversary, and I wonder what your response is. He pointed out the possibility that the District Court may have erred in weighing credibility in the context of a summary judgment motion. What's your position? Yeah, our position and courts of appeal in the Supreme Court has regularly stated that the District Court, in entertaining a motion for summary judgment, is not to make credibility determinations. That's not appropriate at the summary judgment stage. But it is appropriate if no reasonable mind could read the record otherwise. And Ms. Pratt is making the argument that in this case, a reasonable mind can't read the record to indicate that your client made an honest decision after the divorce to start a new life with Ms. Passinan. In fact, the record compels the conclusion that your client was manipulating the process to get a benefit. Certainly. Just two points to answer your question. First, as the Supreme Court has stated in Cungie's v. United States, it's subjective intent, not reasonable person standard, which would necessitate an objective standard. And secondly, we have always maintained that Mr. Gonzales was under no duty to disclose these children at the time of the 751 interview because the definition of child that Congress has provided at Section Right, but that's a red herring. I mean, if we followed that line of argument, we'd say that they aren't children anymore when they're over 21. And clearly, that's not the purpose of that provision. So if we disregard your statutory argument and we want to look at the record here, why is it reasonable for someone to say, yes, in fact, this individual was honestly presenting the claim before the district court? I would reiterate the holding in Cungie's v. United States where they said that the false oral statement must be made with the subjective intent to receive an immigration benefit. So the district court must have looked at what Mr. Gonzales' subjective intent was. And he never thought that these were his children. And what corroborates that other than his deposition? What corroborates his deposition? The fact that he never held these children out to anyone else as his children. He was never named as a father. No DNA test was ever performed to prove that he was, in fact, a biological father. He wasn't just seen, you know, being willfully blind? No, Your Honor. The fact of the matter is that it was his subjective intent, and he thought that these were not his children. It was only later, after he obtained a divorce and moved in with the children's biological mother and married them, then he took it upon himself to amend the birth certificates and call them as his own. Thank you. Thank you very much. Very interesting issues here and very ably presented. Thank you very much. We'll take the matter under advisory.